R. O. MAGEE AND ANOTHER V. F. A. RICE AND OTHERS.

1. When a married woman died previous to the passage of the Act of August 26th, 1856 (Paschal's Digest, Article 4646 *et seq.*), leaving children and an estate in community with her husband, that act had not such retroactive operation as empowered the surviving husband, upon filing inventory, etc., to sell community property, and by his conveyance divest the interests inherited by the children from their mother. And if the community property in question was the homestead when the wife died, and her children were minors, they took her community interest by inheritance, subject only to the rights of creditors, and to the surviving husband's right to occupy the premises as a homestead during his life.

2. A married woman died in 1854, leaving children and her interest in community real estate. After the passage of the act of 1856 (Paschal's Digest, Article 4646 *et seq.*), her surviving husband filed an inventory of the community property, in conformity with the 3d Section of that act, and afterwards attempted to sell and transfer the entire title in a piece of community real estate. It does not appear that the sale was made to provide for community debts, or to reimburse the husband. *Held*, that the conveyance was void as against the children's half interest, inherited by them from their mother previous to the passage of the act of 1856, unless it be shown that they have been fully indemnified by their father or his estate. There is no legal presumption that they have been so indemnified; and even *bona fide* purchasers from their father, for a valuable consideration, must prove the indemnification in such a case as the present. The case of Walker *v.* Howard, 34 Texas, 478, is not to be understood as deciding a different general doctrine.

3. See the opinion, *in extenso,* as to the interest and powers of a surviving husband in and respecting a community homestead, the wife having died prior to the passage of the act of 1856 (Paschal's Digest, Article 4646), leaving minor children.

APPEAL from Harris. Tried below before the Hon. James Masterson.

A lucid statement of the case is given in the opinion of the court. The action was indorsed as a suit of trespass to try title and for damages; but the petition set out specifically the facts on which the plaintiffs asserted their title, and it prayed for partition as well as the usual relief. Benjamin Richey, their father, was made a co-defendant with his vendees, but died pending the litigation in the court below.

The verdict was for the defendants, judgment accordingly, and a new trial refused.

*Henry Cline*, for the appellants. Mrs. Richey owned one-half of this land. Being homestead, the husband could not alienate during her life. It was exempt from liability for debts, and not subject to administration; when the mother died, the law vested her half in her children.

These children were in possession from their mother's death until late in 1860. Plaintiffs in 1860 were only twelve and four-teen years of age—infants, unable to protect themselves, and their father carried them away, and defendants took possession. If a guardian for these children had been appointed, he might have procured an order of court, upon legal grounds, to sell their property to the highest bidder, and conveyed title; but nothing of the kind was done. Defendants claim these children's inheritance nakedly under the act of 1856. Benj. Richey conveyed, " acting in my own right as well as the rep-" resentative of the community estate of myself and my children, " as the heirs of my deceased wife." What community estate has a father with his children? The laws and jurisprudence of Texas ignore such estate, Louisiana, France, and Spain are silent; wherever community exists, it is between husband and wife, a connubial partnership. Only California, in the case of Panaud v. Jones, so egregiously mistook the Spanish law as to recognize the claim of community rights in the survivor. Our Supreme Court examined this California case, discussed the

jurisprudence of Spain and Louisiana, and repudiated the notion that community rights exist after the death of one of the spouses. (Thompson v. Cragg, 24 Texas, 598; Duncan v. Rawls, 16 Texas, 478; Burleson v. Burleson, 15 Texas, 428.)

When Mrs. Richey died, on 31st July, 1854, their connubial partnership was at an end, their marriage was dissolved, and there remained no further marital rights to regulate. The property of the community partnership at the same moment vested in the survivor and the children of deceased, as tenants in common.

The survivor of a commercial partnership cannot make new contracts, binding the estate of his deceased partner; he cannot even acknowledge a just debt, barred by limitation, so as to bind the estate of deceased. Surely the surviving partner in marriage could not have greater power; he might receive what was due the community, and discharge obligations entered into while the community existed, out of property subject to such obligations; but by what right could he, as survivor, convey the title of his children's property—especially this property, which did not vest *sub modo*, i. e., subject to debts and administration—but absolutely. Was it not vested in these children as fully as a tract of land which a stranger might have conveyed to them and their father, to hold in common, at the same date? Suppose their mother had, by will, duly probated, devised the undivided half of these twenty-six acres to these children, would not the title have vested in them? And yet the law regards title by descent as superior to title by devise or purchase. The law had provided a method for conveying minor's property, by guardian, and this was the only method known to the law. *Expressio unius exclusio alterius*.

This act of 1856 assimilated the interest of survivor in community to the estate of surviving husband at common law. It changed—enlarged, survivor's estate. I think this act, on just principles of construction, applies only to parties who entered into connubial partnership after its passage; but, suppose it applies to those previously married, still it purports to be sup-

plementary to the marital rights law. If any part of it applies
to estates of deceased persons, that object is not expressed in
the title.

But surely the Legislature could not have intended to divest
the rights of heirs, acquired in estates descended prior to the
passage of the act of 1856. No line or word in the act inti-
mates that this law should regulate the marital rights of the
dead. Law is a rule of action—a rule for what is to be done—
not for what was done long before the new rule was promul-
gated.

All our Constitutions forbid retroactive legislation. Vested
rights are sacred. No one can be divested of his property,
except by due process of the law of the land. That this act
of 1856 should operate on the estate of Mrs. Richey, who died
in July, 1854, is prohibited by the Constitution then in force,
is contrary to the common sense of justice, is not so direct-
ed by the act itself, and could not have been the intention of
the Legislature.

A dictum in Sossaman v. Powell (21 Texas R., 666), has
been cited, and defendants may rely upon it. Let us consider
this case. The widow and heirs of Sossaman sued Powell to
remove a cloud upon their title to lots on which was the home-
stead of Charles R. Sossaman. Powell demurred—and except-
ed specially: first, the petition did not allege administration,
nor any reason why there is none; and, second, petition did
not allege that said lots had been set apart as homestead.

The court a quo sustained these exceptions. Plaintiffs
appealed. These were the only points in the case. The
Supreme Court overruled these exceptions, and decided that
" the homestead was not subject to administration," and that
" the homestead requires no act of specification to fix its iden-
" tity, and therefore vests with or without administration, and
" whether it be, or be not set apart by the Chief Justice."
" They vest exclusively, half in the widow, and the other half
" in the children of deceased," and lower on the same page,
" the widow becoming the head of the family, is as much enti-

" tled to a homestead as was her husband, and the half of the
" community lands which formed the homestead during mar-
" riage becomes hers absolutely, independent of any adminis-
" tration, or other act whatever, for homestead purposes; and if
" there were no statute, equity would allow her to retain pos-
" session of the other half, for the benefit of the minor
" children of the marriage, as long as they remain in minority,
" and a family, with the widow at the head of said family."
After deciding the case the court referred to the act of 1856.
Sossaman had died nearly two months before the passage of
this act, and the court referred to it *arguendo*.

But, Mrs. Sossaman's rights in no way depended on the act,
and it does not appear to have been argued at bar, or maturely
considered in decision. Besides, the survivor and heirs were
seeking to recover, to clear title—not to convey away; nor is
there any intimation in the opinion, that the survivor had
power under this act, to convey the children's moiety; but the
court does say, that it vested in the children, and the survivor
was entitled to retain possession thereof, for the benefit of the
children. (21 Texas R., 665; Duncan *v.* Norris, 21 Texas, 594.)

*George Goldthwaite*, for the appellees. The counsel for the
appellants lays much stress upon the fact that the property
conveyed by Benjamin Richey to the appellees was the home-
stead. I cannot appreciate the force of this position. The
protection of the homestead, under the Constitution and the
laws, is not by virtue of any prohibition from selling, but a
protection against forced sale, a protection from any dispo-
sition which is not voluntary. There is nothing in the Con-
stitution or laws which absolutely prohibits a disposition of
the homestead by the head of the family, for the payment of
debts, or for any other purpose whatever. The *jus disponendi*
is an incident to the right in property, as valuable as the *jus in
re* itself, and to which the law interposes no absolute prohibi-
tion. It restricts the right of the owner, if a married man, to
dispose of the homestead without the consent of the wife. The

homestead right is not an incident to the thing; it does not attach to the property itself, but is, as it were, an ægis thrown in the one case around the head of the family, to protect the homestead from improvidence or misfortune, and around ·the wife, in the other case, to protect her homestead against any alienation which is not voluntary on her part. It is not an inheritable right, which passes from husband to wife. Upon the death of the husband, it does not pass to the wife as an incident to the estate, like a covenant or condition running with the estate, but it attaches per force of the law to the wife, because the wife, upon the death of the husband, becomes the head of the family. It is a right which does not descend from the deceased parent to surviving child, because it is a protection guaranteed to the head of the family; and to a wife from a conveyance by the husband, which is not voluntary on her part.

In the case at bar, had the homestead been the separate property of the father, no right in it would have passed to the children upon the death of the mother, notwithstanding the mother had such an interest in it as would have prevented their father from disposing of it without their mother's consent. (Tadlock v. Eccles, 20 Texas, p. 791.)

And, further, that as the community property is liable "for "debts of the husband and for debts of the wife contracted "during the marriage, for necessaries;" and as the homestead right does not descend to children and heirs, it is competent for the surviving husband and wife voluntarily to sell and convey the homestead, if it be community property, for the payment of debts. The children and heirs of the deceased husband or wife have no such interest in the homestead, whether it be community property or the separate property of the survivor, as will prevent the survivor from exercising the *jus disponendi* for the payment of debts, and this, too, without regard to the fact that it is not legally liable to be subjected to the payment of debts. For example: A borrows from his confiding friend B five thousand dollars, with which to purchase a family home-

stead. This homestead is acquired during marriage, and is community property; misfortunes overtake him: he cannot repay his friend the borrowed money. His wife, as she has the legal right to do, refuses to join in the conveyance of the homestead during her life. After her death, the husband, actuated by every instinct of honor and honesty, sells the homestead to raise the money wherewith to repay his friend. His children afterwards bring suit against the purchaser for the one-half of this homestead, the community property. Would this court affirm a judgment in their favor?

The case of Tadlock v. Eccles (20 Texas, p. 791) arose upon a mortgage of the homestead by the husband, the head of the family. The wife did not figure in the case. Upon a suit to foreclose the mortgage the children were not made parties. The homestead exemption was pleaded, but the judgment was adverse to the defendant upon that issue. Eccles, the purchaser at the foreclosure sale, brought suit against Tadlock to recover the land. The children of Tadlock intervened for the homestead interest of two hundred acres. Justice Wheeler, in delivering the opinion of the court, said: " But it is in-" sisted that there are other parties, the children of the defend-" ant, who have intervened in this suit, and who are not con-" cluded by the former judgment, because not parties to it. If " the wife were here to assert her rights she would not be con-" cluded, because not a party to the proceeding, and because " she cannot be divested of her right except by her own " voluntary act. But the children cannot control the parents " in the disposition of the homestead, or assert a right therein " adversely to the act of their parents. The parent has the " right to dispose of the homestead without consulting them; " and whatever will bind the head of the family will be binding " upon them. Their domicile follows that of the parent, and " he has the power to choose and renounce it for them at " pleasure."

The case of Brewer v. Wall (23 Texas, p. 585) arose upon a bond executed by Wall to convey the homestead. The suit

was upon a promissory note made by Brewer to Wall as a part of the purchase-money for the homestead. Brewer defended on the ground that, Caroline, the wife of Wall, had never sealed or acknowledged the execution of the bond in the manner required by law. That Wall and his wife remained in possession of the land until the death of the wife; that a child of the marriage survived, who had an interest in the homestead. Exceptions were sustained to this answer, and Brewer appealed. The judgment was affirmed. Justice Bell delivered the opinion of the court, in which it is said, in conclusion : " This court has decided, and the Constitution clearly " contemplates, that the homestead right of the wife does not " survive after her death, so as to vest a homestead right in the " children of the marriage. In other words, after the death of " the wife, the husband may sell the homestead, if it be his " separate property; the children having no interest in the " homestead which restricts the father's right to sell. (Tadlock " v. Eccles, 20 Texas, p. 782.) The twenty-second section of " the seventh article of the Constitution, in speaking of the " homestead exemption, says, ' Nor shall the owner, if a mar- " ' ried man, be at liberty to alienate the same (meaning the " ' homestead) without the consent of the wife,' clearly, as we " think, implying that if the owner be not a married man, he " shall have the power to alienate the homestead." It will be seen from the record in this case (Brewer v. Wall) that the homestead conveyed was community property, and not separate property of the husband. And the only distinction which can be made, as I contend, is that if the homestead be the separate property of the survivor, the survivor may have the absolute and unqualified power of disposition; if it be community property, the survivor might sell for the payment of debts (without any reference to the Act of August, 1856 which will hereafter be considered).

In consideration of this construction of the law applicable to homesteads, then, I say, the children and heirs of Rosanna Richey acquired no more superior right to the property in

controversy by reason of its having been the family home-stead, than if it had been any other unoccupied community property.

And this brings us to the question, what rights had Benjamin Richey in the community property?

The court is familiar with the facts in the case of Jones *v.* Jones, 15 Texas, page 140. In the opinion of the court, delivered by Chief Justice Hemphill, it is said: " To determine " the issue, it will be essential that the character and extent of " the legal right of the appellees, as the heirs of their mother " to the ganancial property, should be clearly understood. On " the death of the wife, her estate became entitled to one-half " of the community property, but her heirs, the appellees, can " claim and finally hold only such portion as may remain after " payment of all just demands against this community. Fe- " brero, in treating of the division of inheritances, declares that " there must be deducted all legitimate debts which the hus- " band, or wife, with his permission, or both jointly may have " contracted on account of the conjugal partnership, and which " must be paid out of the ganancial property, and that the " residue only is divisible, and is what is called the inherit- " ance. (Febrero Novissimo, Vol. VI., p. 124; L. 14, Tit. 20, Lib. " 3, Fuero Real; L. 207 del estillo; 17 La. R., p. 238; 1 Rob., " La. R., p. 378; 7 Id., p. 387.)

" The debts, then, of the partnership have priority of claim " to satisfaction out of the community estate; and the residue, " after the discharge of such debts, is the only portion which is " subject to division between the survivors and the heirs of the " deceased partner. * * * * The ganancial estate remained " in the hands of the surviving husband. As survivor he had " competent authority to discharge the debts of the partnership; " and whether the discharge of the debts, or any act which he " might lawfully do as survivor, be done in his own name simply, " or in his name as survivor, is immaterial. * * * * Nor can " the fact that the husband, since the death of his wife, has dis- " posed of a large portion of the community property, affect the

" right of the creditor to satisfaction out of that which has not
" been sold. What were the motives or inducements to the
" various sales made by the survivor, we are not informed. They
" may have been made to discharge contracts made prior to the
" death of the wife, or to satisfy legitimate demands against the
" community. If so, it is apprehended they could not be dis-
" turbed." This case of Jones v. Jones has been repeatedly
referred to and approved in subsequent cases : " The right to
" make sales of the community property would seem to be a
" necessary consequence of his obligation as survivor to dis-
" charge the debts against the partnership, because, usually, it
" is only by that means that these debts can be paid." (Jones
v. Jones, 15 Texas, p. 147; Good v. Coombs, 28 Texas, p. 50.)

Now, I think these authorities sufficient to demonstrate the
right of Benjamin Richey, the survivor of the conjugal part-
nership, to make sales of the community property. That he had
the right to sell. The appellants in the court below did not
introduce any evidence whatever to negative that right in this
particular case. The marriage of their father and mother ; the
birth and heirship of the children ; the acquisition of the prop-
erty and its occupation as a homestead, and the death of Ben-
jamin Richey since the filing of this suit, are the only facts
established or sought to be established, affecting their right.
What became of the balance of the property inventoried ?
What became of the two hundred acres of land in Grimes
county ? What became of the lot No. 9 in block 16, in the
city of Houston ? What portion of the proceeds of the prop-
erty sold prior to July 10, 1860, did they receive ? What por-
tion of the proceeds of the. property in controversy did they
receive upon their marriage ? What amount of community
debts was there ? Is there any evidence on these points, or
was any evidence upon them offered upon the trial ?

Was such proof necessary to entitle the plaintiffs to recover ?
Let us see ;

In Cooper v. Singleton (19 Texas, p. 267), Singleton sued
Cooper on two notes given for the purchase-money of land sur-

veyed by Crisp to Cooper by warranty deed.  Cooper defend-
ed, alleging that the land conveyed was community property
of Crisp and his deceased wife.  At the time of the convey-
ance there were several children who owned one undivided
half interest in the land.  The plaintiffs' demurrer to this plea
was sustained, and Cooper appealed.  Judge Hemphill deliv-
ered the opinion of the court, and said : " There has been no
" administration on the estate of Mrs. Crisp, as is averred ; and
" in a limited sense, it is true that her heirs are entitled to the
" one-half of the land.  But their interest may be subject to
" great modifications, and ultimately may be altogether excluded.
" They are entitled truly to the half of such portion of the com-
" mon property as may remain after the payment of debts of
" the community.  There may be also a large amount of com-
" munity property, in addition to the land in question.  If such
" be the facts, the portion of the heirs of the wife may be satis-
" fied out of other assets.    *    *    *    The plea should have
" averred the condition of the community estate."

For the same reasons the petition in this case should have
contained these allegations, and they should have been abun-
dantly supported by proof.

In Burleson v. Burleson, 28 Texas, p. 418, the court said,
" their (plaintiffs') rights of inheritance in the community
" property of their father and deceased mother were not unquali-
" fied and absolute, but only attached upon the residue that
" might be left in the hands of their father after extinguish-
" ing the community debts, if there were any.  There is no
" evidence of the community being free from debts, or that
" there was an administration on her estate.  In the absence of
" any administration, the surviving husband was, for some pur-
" poses, the representative of the community, and any sales
" made by him in good faith, and for the purpose of paying
" the community debts, or of reimbursing himself for com-
" munity debts paid by him with his separate funds, would be
" sustained. (Jones v. Jones.)  And we are of the opinion that
" the plaintiffs and intervenors must show the amount of com-

" munity property left at the death of M. B., deceased, and
" what has become of it. They must account for what they
" have received of the community property, and by way of
" advancements, if anything."

Again, in Walker v. Howard, 34 Texas, 478, the case of
Burleson v. Burleson is cited and approved, as also Good v.
Coombs, and Jones v. Jones. But to this case we will again
take occasion to call the attention of the court.

But now I come to what I consider the strong point in the
case, viz. :

That Benjamin Richey, having on the 2d day of June, 1858,
petitioned the County Court of Harris county, representing
that he was the surviving husband of Rosanna Richey, his
wife, who had died in Harris county, leaving children and a
community estate, and setting forth the amount of such com-
munity estate, and praying that it be appraised as required by
law, and that such orders and decrees be made as to the court
may seem proper and right in the premises ; and the court hav-
ing appointed appraisers, who returned their appraisement under
oath ; and the court having proceeded to make an order and
decree thereon, " that the said Benjamin Richey take the
" charge, control, and management of the said community
" property, and that he sell and dispose of the same without
" bond or security, unless required by the future order of the
" court ;" that thereupon he, the said Benjamin Richey, had
full power and authority to manage, control, and dispose of the
property in controversy, in the same manner as he had to
manage, control, and dispose of the community property dur-
ing the life of the wife. The case of Sossaman v. Powell, 21
Texas, 666, is relied upon as settling this case. The court said,
in commenting on the statute of August 26, 1856, Paschal's
Digest, Article 4646 : " That act declares in effect that it shall
" not be necessary for the surviving husband or wife to admin-
" ister upon the community property, but he or she shall have
" the exclusive management, control, and disposition of the
" same after the death of the other partner in matrimony, etc.,

" and that he or she may be sued with respect to the same. The
" husband departed this life nearly two months before the pas-
" sage of this law, but there is not much probability of admin-
" istration having been taken out prior to the passage of this
" act, and if so, there would have been no necessity for admin-
" istration, for by fair construction the act applies to com-
" munity estates not administered upon at the time of the
" passage of the act, as well as to those arising afterwards by
" the death of the husband or wife subsequent to its passage."

This case has frequently been cited and approved by this
court, and at the last term, in the case of Walker v. Howard,
the above extract from Sossaman v. Powell is quoted and
approved; and the court proceeds: " Now there is some ques-
" tion as to whether the community estate of Buckley and wife
" had been administered at the passage of this act, and how
" far the act affected the right of Buckley to sell and dispose
" of any community property which remained after admin-
" istration had been completed. The third section of said act
" requires the husband, in the event his wife had a surviving
" child or children, to file an inventory of the community
" property. The fifth section empowers the County Court to
" require a bond from the husband, or to appoint administra-
" tion on the estate, as in other cases, upon the heirs of the
" wife, showing that the husband is wasting or mismanaging, or
" is about to waste or mismanage such community property, or
" is about to remove it out of the State, or otherwise dispose
" of it in such manner as to injure or defraud the right of such
" heirs.

" In Burleson v. Burleson, the court say, in speaking of the
" right of heirs to recover community property, ' If they desire
" ' to enforce them at this late day they must be prepared to
" ' show and do equity themselves. Their rights of inheritance
" ' in the community property of their father and deceased mother
" ' are not unqualified and absolute, but they attach upon the
" ' residue that might be left in the hands of their father, after
" ' the extinguishment of the community debts, if there were

" 'any.' It is not made clear to the minds of the court that " there were not community debts unpaid even at the date of " the sale from Buckley to Holstein, but about nine years had " elapsed between the death of Mrs. Buckley and the date of " the deed to Holstein, and it is fair to presume, there hav- "ing been administration on the estate of Mrs. Buckley, that " the debts had been paid, or were at least barred by the statute " of limitation.

" But the surviving husband had the right to sell the com- " munity property to reimburse himself for community debts " paid by him out of his own funds; such, however, would " have been a debt against the ganancial estate, and should " perhaps have been presented to the executor of Mrs. Buck- " ley's will, for payment.

" We do not feel bound to presume anything in favor of the " claim of the appellees, but rather hold with the court in " Burleson v. Burleson, that they must account for what they " have received out of the community property.    *    *    *

" We are not sure that the act of 26th August, 1856, " could have affected the parties in this case; but if the admin- " istration were not complete upon the estate of Mrs. Buckley, " at the date of its passage, then it did affect the community " estate, and gave Buckley an almost unqualified power to con-- " trol, to sell, and dispose of the estate."

Now, there is no question in this case about administration on the estate of Rosanna Richey. There was none. But there was a community estate of Benjamin Richey and Rosanna Richey, which remained open and unadministered upon, from the time of the death of the wife, on the 31st July, 1854, until the 2d day of June, 1858, when Richey, the survivor, filed an inventory, and had the community property appraised, and he then proceeded to manage, control, and dispose of the community estate for the payment of debts, or to reimburse himself for community debts paid by him, or otherwise manage, control, and dispose of the same, making use of it in such manner as to him might seem right and proper; and he alone

became responsible to the heirs of the wife, " That he should " keep a fair and full account and statement of all exchanges, " sales, and other disposition of the community property, and, " upon final partition, he should account to the legal heirs of the " wife for their interest in said community, and the increase and " profits of the same ; " and it follows, as a necessary sequence, that the heirs should bear the loss, if loss should be sustained, in the management of such estate.

But the counsel for the appellants contends that the act of August 26, 1856, is unconstitutional, in that it assimilates the interest of survivor in community to the estate of the surviving husband, at common law, changes and enlarges survivor's estate, and suggests that it applies only to parties who entered connubial partnership, after its passage ; that it purports to be supplementary to the marital rights law, and if any part applies to estates of deceased persons, that object is not expressed in its title ; and further, that it is retroactive. I cannot think that this court will entertain such an objection to this act, and at this late day unsettle the titles which have sprung up under it. Surely suits of this character, in which children are attacking the conduct of their parents, and charging them with all manner of frauds, with intent to swindle and cheat their offspring out of an inheritance, have become common enough in the courts of the country, without opening another avenue to such litigation. This act was passed for the express purpose of cutting off such litigation.

This act does not, I contend, assimilate the interest of the survivor in the community, to the estate of the surviving husband at common law, nor does it change or enlarge the survivor's estate. It leaves the interest or estate of the child or heir just where the law placed it, before the passage of this act—in the child or heir *sub modo*—subject to administration, by the father or mother, who, in such administration, will not only act for himself or herself, but for his or her minor child or children, whose interest, it is to be presumed, will be guarded with all the solicitude, watchfulness, and anxious care of paternal

affection. It was that the property, capital, and credit, acquired by the community, during the existence of the community, might be kept actively employed by the survivor, for the joint benefit of the survivor and the heirs of the deceased, until partition be made, when the survivor is required to account for their interest in said community, and the increase and profits of the same, according to the law of descent and distribution.

In 1856 there was a community estate between Benjamin Richey and his deceased wife, vacant, unadministered upon. The act of August, 1856, declares hereafter, after the passage of this act, "Section 2. It shall not be necessary for any sur- "viving husband to administer upon the community property "of himself and his deceased wife, but he shall have the ex- "clusive management, control, and disposition of the same, "after her death in the same manner as during her life, sub- "ject to the provisions of this act."

This act was complied with in every particular; the appellees purchased the property in good faith, from Benjamin Richey, the survivor, paid the enormous price demanded, and ought not now to be disturbed. I therefore in behalf of the appellees insist that there is no error in the judgment of the court below, and pray that it be affirmed.

WALKER, J. The marriage of Benjamin Richey with Rosanna, his first wife, in 1840; the birth of four children to them during their marriage; the death of the wife and mother, on the 31st of July, 1854; the subsequent death of two of the children, intestate and without issue; the heirship of the plaintiffs, Mrs. Gogle and Mrs. Magee, are all facts admitted upon the record.

It is also shown by the evidence that during the marital partnership of Richey and wife, they acquired twenty-six acres of land in Harris county, which they improved and occupied as a homestead; and that Benjamin Richey, with his minor children, occupied the same until after he had sold it to the appellees, on the 10th day of July, 1860.

The defendants offered in evidence, on the trial, the petition and inventory filed by Richey as the survivor of the connubial partnership, on the 8th day of June, 1858; and also their deed, dated July 10th, 1860, for 14 and $\frac{87}{100}$ acres, part of the twenty-six acres owned and occupied as homestead at the time of Mrs. Richey's death. Also the obligation of the appellees to said Benjamin Richey, for twelve thousand dollars, the same appearing by indorsements to be fully paid.

This was substantially the evidence before the jury.

The charge of the court was, first, "that if the property was "acquired during the coverture of Benjamin and Rosanna "Richey, though the title was in the name of the husband, it "was community property, and the husband might sell it during "the life of the wife, without her joining in the deed, unless it "were a part of the homestead." But the jury were also very properly instructed that they had nothing to do with any conveyances, except the conveyance to the defendants. The charge proceeds to say to the jury, that "if B. Richey, as surviving "husband, filed in the County Court an inventory of community "property owned by himself and his deceased wife, and that the "same was approved by said court before the sale to the defend-"ants was made, and that it was made for a valuable considera-"tion, then the deed to the defendants passed the title to them."

If this portion of the charge correctly states the law, then it was certainly competent for the plaintiffs to show that a valuable consideration was not paid, and it was error to exclude the evidence of Groesbeck, which was offered to prove that the assumed payment was made in Confederate money.

But this portion of the charge is otherwise erroneous. The Act of the 26th of August, 1856, entitled "An Act supplemen-"tary to the Act of March 13th, 1848, entitled, an Act better "defining the marital rights of parties," was not in force on the 31st of July, 1854, when the mother of these appellants died; and there was a descent cast of the title, upon the children of Mrs. Richey, of her half of the community property; and under the Act of 1848, the children took this property, subject only

to their father's right to use and occupy it during his life as a homestead, and the rights of the community creditors.

This is the doctrine recognized in Jones v. Jones, 15 Texas, 140; Tadlock v. Eccles, 20 Texas, 782; Brewer v. Wall, 23 Texas, 585; Good v. Coombs, 28 Texas, 50; Burleson v. Burleson, 28 Texas, 418; Cooper v. Singleton, 19 Texas, 267; Sossaman v. Powell, 21 Texas, 666; and Walker v. Howard, unpublished. (34 Texas, 478.)·

Though several of these cases were decided upon a very different state of facts, some of them were decided under the Act of 1848, and some of them under the Act of 1856, and it is notorious to the profession, and a fact by no means denied by the court, that some degree of confusion will be found to exist among the many opinions from time to time delivered by our predecessors and by ourselves, almost every case having come before the court upon a state of facts differing from other cases; and it is by no means remarkable, that both the Bar, and the Bench should have been thrown into some confusion. But to return to the case at bar.

The Act of August 26th, 1856, upon the state of facts in this case, could not have related back to the 31st of July, 1854, to divest the interest of the appellants, or place it in such a position that the surviving father, by filing an inventory of the community property in the manner directed by that law, could have acquired any right to sell the property, unless it had been necessary for the purpose of paying community debts, or to reimburse himself for advances made on the community property.

Upon a very full and careful examination of the law, we are then of opinion, that upon the death of the mother, Mrs. Richey, her interest in the ganancial property descended to her children, subject only to the community debts and the rights of the surviving partner for reimbursements.

But it is insisted that other community property has descended to the plaintiffs, fully equal to their mother's interest in the entire community property. If this be shown, equity

will protect the rights of *bona fide* purchasers, for a valuable consideration, from the father.

But in this action we do not think it incumbent upon the appellants to prove that they have not received their full share of the community property. This is a matter of defense, and the *onus probandi* is upon the appellees; and we will here remark, that if the case of Walker *v*. Howard is in conflict· with this doctrine, it must stand corrected, although we think it is not.

The second branch of the charge to the jury, as well indeed as the whole charge, appears to proceed upon the idea that the Act of August 26th, 1856, must apply to this case, and for that reason, no doubt, the learned judge, as we think, erroneously instructed the jury—as also in the third charge.

The second and third charges read as follows :

" *Second.* On the question of the right of the survivor of " the connubial partnership between B. Richey, the father, and " Rosanna Richey, the mother, of plaintiffs, to sell the home- " stead, being community property in the inventory returned " by the father, you are charged that the head of the family " cannot be controlled in the disposition of the homestead by " the children after the death of the wife, and that the deed " given in evidence by the defendants vested the title to the " property conveyed in them.

" *Third.* It makes no difference whether the mother died " before or after the 26th August, 1856, so that the sale of " the survivor was after said date, and after a return of an " inventory of the community property, in accordance with the " law, which took effect on 26th August, 1856, entitled ' An " ' Act supplementary to the Act of March 13th, 1848, entitled " ' an Act better defining the marital rights of parties ' (Pas- " chal's Digest, page 780); and the jury, if convinced that " such sale was made to defendants by B. Richey, the father " of plaintiffs and surviving husband of their mother, after " he had returned an inventory of the community estate of " himself and his deceased wife, and after its approval by

" the County Court of Harris county, Texas, you will find for
" defendants."

We have already sufficiently explained the law of this case,
to show that both the second and third branches of the charge
are erroneous.

Our opinion will perhaps be better understood if we say
that it was not the homestead right which descended from
Mrs. Richey, upon her death, to her children, which the sur-
viving husband could not control or even alienate ; but it was
the fee of an estate in common with the father, subject only
to the conditions before stated. The father had a right to
occupy the property as a homestead. The homestead right
was guaranteed by the Constitution of 1845 to families—to
every family. It was a right not transmissible or inheritable
to or by the heir at common law ; but community property
was transmissible.

Had the property in question been merely a homestead,
Benjamin Richey could not have sold it, during the lifetime of
his wife, without her consent ; but it being community prop-
erty as well as a homestead, though he might sell his home-
stead right, or abandon it after the death of his wife, yet he
could not sell that which was inheritable and did descend, on
the death of the mother, to her children, except as already
stated. He had a right to sell or dispose of his own interest in
the property, but not by metes and bounds. He became and
was a tenant in common with his children, with unity of pos-
session and unity of title, and his interest in the estate was
subject, alike with theirs, to community debts, if any such
existed.

The judgment of the District Court is reversed, and the
cause remanded.

Reversed and remanded.