### J. L. WRIGHT ET AL. *v.* J. H. DOHERTY ET AL.

1. COMMUNITY PROPERTY—HOMESTEAD.—Under our statute, if the deceased spouse leave a child or children they take by inheritance the community half of the ancestor, subject to the community indebtedness. This applies to the homestead, subject to the use of the same, as such, by the survivor.

2. PLEADING—NOT GUILTY—ESTOPPEL.—In an action of trespass to try title by heirs of their mother against vendees holding under deeds from the father executed subsequent to the wife's death, the defendant, under the plea of not guilty, may prove the equities, if any, against the plaintiffs by reason of their having received through their legal guardians the proceeds of land received by the father after the death of the mother in exchange for the land the community interest in which was sued for.

3. ESTOPPEL.—The lawful act of a legally-appointed guardian, performed in the proper discharge of his duties, will conclude the ward.

4. SAME.—But where such acts of a guardian, in disposing of lands obtained by the father in exchange for the lands sued for, are relied

upon as an estoppel against the heirs, such sale must be shown to have been made and approved by order of the Probate Court.

5. RECITALS.—In a deed by a guardian, recitals of his official character are not evidence of his appointment as guardian.

6. PAROL EVIDENCE.—Nor is parol evidence, that the maker of a deed acted as guardian of the parties for whom he acted in making such deed, admissible to sustain such deed against the right of the minors, in the absence of evidence of a confirmation of such sale by the Probate Court.

APPEAL from Cherokee.  Tried below before the Hon. R. S. Walker.

The case is fully stated in the opinion.

*Gwinn & Gregg*, for appellants.—The first error assigned is the action of the court in rendering a judgment against the defendants for one-half the land in controversy.  By reference to the statement of facts, it will be seen that on the 17th day of October, 1850, the land in controversy was exchanged for a part of the J. B. McCracken headright, which was conveyed by Kimbro to Doherty by deeds of same date, Doherty conveying the land in controversy to Martin L. Kimbro, son of Lemuel Kimbro, the consideration acknowledged in both deeds being the same; and, as shown by the testimony, the land received by Doherty, with its improvements, was of equal value to the land in question, each party removing immediately to the respective lands received by them in said exchange, Doherty residing thereon until the date of his death.

It is respectfully suggested that the said Doherty, the father of plaintiffs, had the right, as survivor, under the law, to exchange his homestead for another, or even to sell it; and that the children have no right to the homestead, or any part thereof, until after the death of their father.  (Johnson *v.* Taylor, 43 Tex., 121; 28 Tex., 418; 23 Tex., 586; 15 Tex., 143.)

Admitting, however, for the sake of argument, that the surviving husband had no right to sell the community inter-

est of his deceased wife, still, in view of the fact that plaintiffs had received full value in another homestead of lands, it was error to render judgment for them without at the same time requiring them to account to appellants for the amount received by them, to wit, one-half of the value of the lands received by their father, Jeremiah Doherty, of the value of seven hundred and fifty dollars. It is claimed by the appellants that the heirs of Jeremiah Doherty are estopped by the action of their father, he having only exchanged land for land,—or, in other words, homestead for homestead,—the thing given being the same as the thing received; and hence the rule of "he who asks equity must do equity" is invoked.

*S. A. Wilson* and *S. B. Barron,* for appellees.—We submit this proposition, which we presume will not be controverted, that appellees, as heirs of Alzira Doherty, inherited at her death, in the year 1852 or 1853, an undivided one-half interest in the land in controversy in fee-simple, subject, however, to be sold to pay community debts, or to satisfy a just claim of the surviving husband for reimbursements. (Paschal's Dig., sec. 4642; 20 Tex., 244.)

There is no question in this case of a sale to pay community debts; none raised by the appellants. No community debts are proved to have existed, and the presumption is that there were none. There is no question as to a sale to reimburse the surviving husband raised by appellants, and no proof on that subject.

Neither was there any question raised as to his right to sell under the statute of August 26, 1856, relative to community estates; and if it had been raised, as the said Alzira died prior to the passage of the law, he could not have qualified and sold under this statute, and it has been so held by our Supreme Court. (Magee *v.* Rice, 37 Tex., 500.)

Does a mere general denial and plea of not guilty admit any and all equitable defenses to be made available in resisting the claims of the heirs of the deceased wife to her share

in the community property? We argue that it does not; but that if any equities are relied upon they must be set up by the defendants. (See Magee *v.* Rice, 37 Tex., 501; 27 Tex., 604; Duncan *v.* Rawls, 16 Tex., 501, 502.)

In the latter case, Chief Justice Hemphill said: "It is not necessary to consider what equities might be set up by a surviving husband or his vendees against the claims by the heirs of the deceased wife for her share in the community; as, for instance, that the property is subject to or has been disposed of in payment of debts, or that there is other property of the community sufficient to satisfy the claim. No such points are raised in this case."

We might repeat, in the same language, no such points are raised in this case, nor is there any proof tending to sustain any such points. Appellants argue that the surviving husband had a right to control the homestead, and hence could sell one and buy another, or exchange one for the other. For the sake of argument, grant that he had a right to control the homestead of himself and children as a homestead; but does it follow, from that, that he had any right to alienate the undivided interest of these claimants in the community property? We hold that it does not. He could only alienate his own interest, and his vendees would become tenants in common with the minors, and might demand a partition; and this point is abundantly sustained by authority. (See Clark and Wife *v.* Nolan & Campbell, 38 Tex., 416; 37 Tex., 91, 92; Magee *v.* Rice, 37 Tex., 498; Walker *et al. v.* Young *et al.*, 37 Tex., 519; Bell *et al. v.* Schwarz, 37 Tex., 572.)

BONNER, ASSOCIATE JUSTICE.—James H. Doherty and others, plaintiffs below, appellees in this court, some as children and others as grandchildren of Alzira Doherty, deceased, wife of Jeremiah Doherty, also deceased, brought suit on the 27th of August, 1873, against defendants below, Joseph Wright, George Brock, and Robert Batton, in the ordinary form of

trespass to try title, to recover the one-half community in-
terest of the said Alzira in and to a tract of four hundred
and six acres of land, claimed by them to have been sold by
Jeremiah Doherty after her death.

The plaintiffs, by affirmative allegations, averred that this
sale was not made to pay indebtedness of the community;
that there was no necessity for the same; and that it was
made in violation of law and of their rights.

The defendants answered by general and special excep-
tions, and plea of not guilty.

It was admitted on the trial that the land in controversy
was the community property of Alzira and Jeremiah Doherty;
that she died intestate, in the year 1852 or 1853; that there
was no administration on her estate; that the thirty acres
claimed by defendant Batton was sold during her lifetime;
that on the 17th of October, 1856, the said Jeremiah sold
and exchanged three hundred and seventy-six acres of the
land in controversy with Lemuel Kimbro for one hundred
and ninety-eight acres, part of the McCracken survey; and
that this land so taken in exchange was owned by Jeremiah
Doherty at his death.

The testimony tended to prove the heirship of the plain-
tiffs as alleged; that the two tracts of land so exchanged, with
the improvements, were at the time about equal in value;
that the defendants Wright and Brock claimed title to the
three hundred and ninety-six acres of land in controversy
under this exchange, and conveyances down to them, and
were in possession; that at the death of Alzira this land
was the homestead of the family; that Jeremiah died about
the year 1861; that an administration was had upon his
estate; but whether the one hundred and ninety-eight acres
of land so received by him was inventoried as a part thereof,
or what disposition was made of the same, or any portion of
his estate, is not shown. There is no evidence that there was
any community indebtedness at the death of the wife, except
that which was paid out of the community personal assets,

or that the plaintiffs ever actually received anything from the estate of Alzira, or from Jeremiah or his estate, in lieu of their ancestor's community interest.

The defendants introduced in evidence two deeds: one, a joint deed of date 11th February, 1870, made by L. R. Sides, purporting to act as guardian of certain of the minor plaintiffs, and by John Felps, purporting to act as guardian of certain others of them, conveying to one Joseph Wright their interest of one-half in and to said one hundred and ninety-eight acres of land for the consideration of $76.23; the other, a deed of date November 15, 1869, made by John T. Murray, purporting to act as guardian of the two remaining plaintiffs, then minors, James H. and Adaline Doherty, conveying to Joseph Wright their interest in the land for the consideration of $152.46.

There was no evidence that Sides and Felps were the guardians for the plaintiffs for whom they purported to act, except the fact of the execution as such of said deed, and no recital therein either that the sale was made or confirmed by order of any court; neither was there any evidence that John T. Murray was guardian for the plaintiffs for whom he purported to act, except the fact of the execution as such of the deed made by him and the testimony of the witness E. W. Bush, "that he knew Murray was acting as guardian of Jimmy and Adaline Doherty, and knew the land sold by him as guardian." There was a recital in this deed that the sale was made by order of the Probate Court of Cherokee county, but no recital of any confirmation of the sale. Plaintiff J. H. Doherty testified "that he was not acquainted with John T. Murray; never knew that he was appointed as his guardian, and never received anything from him whatever."

A jury was waived and the cause submitted to the court. Judgment was rendered for the plaintiffs against the defendants Wright and Brock for an undivided one-half interest in the three hundred and ninety-six acres of land, and for partition; and in favor of defendant Batton for the thirty acres

claimed by him.   Motion for new trial for defendants Wright and Brock, for the alleged reasons that the judgment was not authorized by the law and the evidence, but was contrary thereto.   Motion overruled, and these two defendants appeal and assign as error—

1. The court erred in giving judgment for plaintiffs for one-half the land in controversy.

2. The court erred in overruling the motion for a new trial.

The two errors assigned, being substantially the same, will be considered together.

There was no question raised in the pleadings, evidence, or argument of counsel as to the statute of limitations, stale demand, valuable improvements, or purchase for a valuable consideration, without notice, in good faith; and the testimony fails to show satisfactorily that the plaintiffs ever actually received anything in lieu of the community interest of their deceased ancestor.

The plaintiffs, by affirmative allegations, negative the equities contemplated by our statute and decisions on the subject of community indebtedness and necessity of sale to pay the same, or of having received, by advancement or otherwise, property in lieu of the interest sued for.   The evidence sustains these allegations sufficiently to make a *prima-facie* case, and this was not satisfactorily rebutted by testimony in behalf of the defendants.

Under our statute, if the deceased spouse leave a child or children, they take by inheritance the community half of the ancestor, subject to the community indebtedness.   (Paschal's Dig., art. 4642.)

This applies to the homestead, subject to the use of the same, as such, by the survivor.   (Clark v. Noland, 38 Tex., 416; Hartman v. Thomas, 37 Tex., 90; Magee v. Rice, 37 Tex., 483; Walker v. Young, 37 Tex., 519; Bell v. Schwarz, 37 Tex., 572; Sossaman v. Powell, 21 Tex., 664.)

The land in controversy was community property, and the

sale was made after the death of the wife, and not under any of the equities contemplated by our statute or decisions which would authorize the same. It was not made under a regular administration or guardianship, or by virtue of special proceedings authorized by the community act of 1856, if, under the facts of this case, as applied to that of Magee *v.* Rice, 37 Tex., 483, the aid of this statute could have been invoked. It follows, then, that the sale by the surviving husband would not divest the title of the plaintiffs as heirs of the deceased wife, neither would it bar their recovery of the same, unless they are estopped by reason of having received and appropriated through their legal guardians the land, or proceeds of the same, which was received by the surviving husband for that in controversy. This defense, if sustained by the evidence, could be made available under the plea of not guilty in trespass to try title. (Mayer *v.* Ramsey, 46 Tex., 371.)

This, then, narrows the issues down to this controlling question : Are the plaintiffs, under the evidence in this case, estopped by the sale of this one hundred and ninety-eight acres of land by those who purported to act as their guardians ?

An estoppel does not give an estate, or divest another of an estate in lands, but merely binds the interest by a conclusion which precludes the party against whom it operates from asserting or denying the state of the title. (3 Wash. on Real Prop., 96.)

Parties under disability, as infants and married women, are not estopped unless their conduct has been intentional and fraudulent. (Bigelow on Estoppel, 486.)

The lawful acts of a duly appointed and acting guardian, performed in the proper discharge of his duties, under the orders of a court of competent jurisdiction, would bind his ward; but when the acts of one purporting to be the guardian are relied upon to bind the ward, it is necessary to show by competent testimony that the party purporting to act as such was the guardian and had the proper authority to execute the power invoked. The power to bind must exist to make the

act valid, and when relied upon as a muniment of title must be shown. In deraigning title under a sheriff's deed, a valid judgment and execution must be proven to support the deed. (Criswell v. Ragsdale, 18 Tex., 443, and authorities cited.) Though a deed recites that it was made by virtue of a power of attorney, this of itself is not sufficient evidence of the power, but it should be proven otherwise, expressly or presumptively. (Watrous v. McGrew, 16 Tex., 506.)

It is a general rule, that the declarations or admissions of one who assumes to act as the agent of another are not of themselves admissible to prove such agency. (Latham v. Pledger, 11 Tex., 439.)

In commenting upon the effect of recitals in sheriff's deeds, the court, in Howard v. North, 5 Tex., 311, though commending the practice as productive of great convenience, says: "The recital of the power to sell and convey did not give the right; nor was it evidence of the right."

There was no evidence that the purported guardians had ever been duly appointed, or that they in fact acted as such, except the bare execution of the deed, and as to J. T. Murray, the testimony of E. W. Bush that he so acted; and no evidence, or recital even in one of the deeds, that the sales were made by order of any court; and no evidence or recitals in either of the deeds that the sales were ever confirmed, as expressly required by statute. This confirmation is intended for the protection of the minors and as a prerequisite to vest title in the purchaser. (Paschal's Dig., arts. 1327, 3909.)

No error being apparent in the record before us, the judgment below is affirmed.

JUDGMENT AFFIRMED.